UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LAURA O.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:22-cv-0092-RLY-MJD |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Laura O. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. § 423(d). Judge Richard L. Young has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 25.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the District Judge **REVERSE** the decision of the Commissioner.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB in October 2020, alleging an onset of disability as of December 1, 2018. [Dkt. 10-5 at 5.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Michael Scurry ("ALJ") on October 19, 2021. [Dkt. 10-2 at 32.] On November 22, 2021, ALJ Scurry issued his determination that Claimant was not disabled. *Id.* at 14. The Appeals Council then denied Claimant's request for review on April 29, 2022. *Id.* at 2. Claimant timely filed her Complaint on July 3, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before

continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of December 1, 2018. [Dkt. 10-2 at 17.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease, injury of the right trigeminal nerve, muscle spasms, idiopathic peripheral neuropathy, fibromyalgia, anxiety, and depression." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 18. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl, and is able to understand, remember, and carry out detailed but not complex tasks on a sustained basis.

*Id.* at 21.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 25. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as marker, routing clerk, and photocopy machine operator.

*Id*.https://www.westlaw.com/Document/NA5322BD08CDD11D9A785E455AAD0CC92/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=da3.0
Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 26.

### IV. Discussion

Claimant raises two issues in her brief, each of which is discussed, in turn, below.

**A. Multiple Sclerosis Diagnosis**

Claimant has undergone numerous tests to determine whether she has multiple sclerosis ("MS"). Claimant's treating neurologist, Dr. Mufti, suspected that she had a demyelinating disease like MS and referred her for an MRI of her brain, which she underwent in November 2018. Dr. Mufti stated that the MRI "revealed white matter lesions in periventricular and subcortical white matter" and that a "[d]emyelinating process such as [MS] was suspected." [Dkt. 10-10 at 38.] A spinal tap performed that same month was negative. Dr. Mufti referred Claimant to an MS specialist in Louisville, whom Claimant saw on January 17, 2019. The specialist concluded that Claimant did not have MS. *Id.*

In March 2020, Dr. Mufti noted that "[g]iven patient's symptoms and her examination [e]specially her hyperreflexia and weakness on left side I would like to do further workup and I am going to do repeat MRI of her brain with MS protocol along with MRI of cervical and thoracic spine." *Id.* at 52. An April 8, 2020, brain MRI noted that her MRI was "stable" and showed "scattered areas of increased T2 signal with periventricular, deep and subcortical white matter of both cerebral hemispheres." In September 2020, Dr. Mufti noted that "given her symptoms and her MRI findings, I still think that there is a possibility of MS." *Id.* at 58. Dr. Mufti "offered her a repeating MRI of her brain with MS protocol and referring her to another MS specialist at Vanderbilt or IU." *Id.*

In October 2020, Claimant was referred to neurologist Carla Brandt for "a third opinion regarding whether or not she has [MS]." *Id.* at 94.[2] A brain MRI performed that month was again stable, "without evidence of progressive disease" and with "no definite new lesions despite patient's reported new symptoms." [Dkt. 10-11 at 5.] Dr. Brandt's report stated:

> The question at this point is whether or not this patient is suffering from [MS]. I could certainly understand the concern, given the findings on MRI. However, there is nothing about the appearance of lesions on MRI that are particularly classic for [MS]. Specifically, the lesions are equally subcortical and periventricular, there are no lesions of the corpus callosum, brainstem or cerebellum, and there is no enhancement. She had a negative MRI scan of the cervical spinal cord and spinal fluid analysis was negative. With regard to the latter, 90% of patients with MS will have positive spinal fluid findings. It is also notable that she has a number of symptoms which are not typical for MS. Specifically, fasciculations. It is also notable that she has generalized myalgia and arthralgias. Her examination also demonstrates fairly dramatic give away weakness and a crouched gait. Therefore, there is nothing about her exam that would be particularly convincing for [MS]. Finally, she was seen by a [MS] specialist who favored that she did not have MS. Given the above, I would favor that the majority of her complaints are secondary to fibromyalgia, with the possible exception of the numbness of her right lower lip and chin. Once again,

---

[2] Claimant opted to see a local neurologist, rather than traveling to Vanderbilt or IU.

> if we look at the MRI scan of the brain, I think we should evaluate her further. I would favor repeating the lumbar puncture and also obtaining a visual evoked potential study.

[Dkt. 10-10 at 95.]

Claimant's hearing was held on October 19, 2021. At the hearing, Claimant testified that her treating neurologist, Dr. Mufti, had told her that she was "90 percent sure that I have MS" and had referred her back to the MS specialist in Louisville. [Dkt. 10-2 at 46.] The ALJ held the record open for two weeks following the hearing so Claimant could submit the records from her October 13, 2021, visit with Dr. Mufti. *Id.* at 39. Those records were submitted on November 10, 2021, and, although untimely, were accepted into the record by the ALJ. [Dkt. 10-11 at 2.]

The visit notes from Dr. Mufti dated October 13, 2021, contain results from an October 8, 2021, brain MRI, which found the following:

> There are moderate white matter changes seen in both the subcortical and deep white matter of the bilateral cerebral hemispheres. These are compatible with demyelinating plaques and are mild to moderate in severity. No areas of diffusion restriction. No abnormal enhancement.

[Dkt. 10-11 at 5.] Dr. Mufti characterized this MRI as "stable as compared to previous MRI done October 16, 2020." *Id.* at 2. Under "Assessment," Dr. Mufti listed the following:

1. MS (multiple sclerosis) (HCC)
2. Trigeminal neuralgia of right side of face
3. Neuropathic pain
4. Idiopathic peripheral neuropathy
5. Paresthesia
6. Fatigue, unspecified type
7. Muscle spasms of lower extremity, unspecified laterality

6

Dr. Mufti also noted that "patient's symptoms are getting worse"[3] and that she "is now seeing and other [sic] MS specialist in Louisville. Her next appointment is in couple of weeks." *Id.* The record does not contain any notes from that anticipated appointment.

The ALJ's only mention of MS in his decision comes at Step 2 of his analysis. The ALJ found the following:

> The claimant also has several non-medically determinable impairments (non-MDIs). An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. The claimant has alleged disability, in part, based on pancreatic ductal carcinoma (B2E). However, there is no evidence of same contained in the record.[4] The claimant has also alleged disability in part based upon brain lesions, and she has been evaluated for multiple sclerosis (B2E; B12F). However, while MRI scans of the brain have noted white matter lesions, imaging has remained stable over time (B5F/44; B11F/22, 29; B12F/18). Spinal imaging was negative for demyelinating lesions, and a lumbar puncture was negative for multiple sclerosis (B7F/8; B11F/16, 17, 22; B12F/19). Further, several doctors indicated no multiple sclerosis diagnosis, no suggestive or concerning physical examination findings, and no diagnostic studies to support such a diagnosis (B7F/8, 10; B11F/1, 28; B12F/18-20). As such, the undersigned considers these alleged ailments to be non-MDIs.

[Dkt. 10-2 at 18] (footnote added). Claimant also argues that the ALJ erred by not acknowledging and considering the fact that her treating neurologist diagnosed her with multiple sclerosis (MS). The Court agrees.

---

[3] Claimant's counsel quotes the note as stating "MS patient's symptoms are getting worse." [Dkt. 24 at 2.] While the note does contain that line exactly as quoted, that appears to be a transcription error. The note actually should be read as follows: "[Claimant] has been evaluated by MS specialist in University of Louisville and was told it does not look like MS. [P]atient's symptoms are getting worse." [Dkt. 10-11 at 6.]

[4] The Court notes that the record contains a correction of that error by Claimant, dated March 11, 2021. *See* [Dkt. 10-6 at 26] ("Around 9/2020 Claimant was diagnosed with Primary Billiary Cirrhosis—not Pancreatic Ductal Carcinoma. That was an error and needs to be corrected.").

The Commissioner argues that "[t]here is no question that the ALJ received and considered the additional evidence." [Dkt. 19 at 13.] It is clear that the ALJ received and accepted the report from Dr. Mufti. *See* [Dkt. 10-2 at 14-15] ("Additional evidence was received on November 10, 2021; although this was submitted outside of the window with no request for an extension, the undersigned admitted it into the record."). However, the ALJ does not mention the content of Dr. Mufti's note at all. The Commissioner argues that the ALJ did not need to mention it, because it "did not document a change in Plaintiff's condition." [Dkt. 19 at 13.] However, Dr. Mufti included a diagnosis of MS in the note, something that she had not done in previous records.[5] Therefore, Dr. Mufti—who was Claimant's treating neurologist—apparently believed that something had changed. The ALJ therefore was required to consider that fact in arriving at his decision. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (ALJ must "confront the evidence in [a claimant's] favor and explain why it was rejected before concluding

---

[5] The Commissioner suggests that Dr. Mufti did not actually diagnosis MS, stating that

> While multiple sclerosis is listed in the 'Assessment' section at the close of the report from Dr. Mufti, so are symptoms of neuralgia of the right side of the face, neuropathic pain, idiopathic peripheral neuropathy, paresthesia, unspecified fatigue, and unspecified muscle spasms in the lower extremities, suggesting possible other causes for Plaintiff's symptoms. (Dkt. 10-11 at p. 6, R. 1070).

[Dkt. 19 at 13]. This is not a persuasive argument. Dr. Mufti's "assessment" was that Claimant had each of the things listed in the "Assessment" section. Dr. Mufti did not say "possible MS" or "rule out MS"; she assessed—that is, diagnosed—MS. If the ALJ was uncertain about the meaning of this assessment, he should have sought clarification from Dr. Mufti, or at least explained in his decision why he did not feel it was necessary to do so. *See Day v. Astrue*, 334 F. App'x 1, 7 (7th Cir. 2009) ("[A]n ALJ is required to further develop the record if he cannot understand the evidence." (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.")).

8

that her impairments did not impose more than a minimal limitation on her ability to perform basic work tasks").

Finally, the Commissioner argues that the ALJ's assessment of Claimant's subjective symptoms would not have changed even if the ALJ had recognized the diagnosis of MS. But given that the ALJ relied on the fact that Claimant had not been diagnosed with multiple sclerosis to determine that her brain lesions were a non-medically determinable impairment—a finding that is illogical on its face[6]—the Court cannot say with any certainty that Dr. Mufti's diagnosis of MS would not have changed the ALJ's assessment of Claimant's subjective symptoms. Remand is therefore required.

On remand, the ALJ shall consider Dr. Mufti's MS diagnosis and articulate the effects, if any, of that diagnosis on his conclusions.

## B. Accounting for Moderate Limitations in Concentration, Persistence, or Pace

The ALJ found that Claimant had a moderate limitation in concentrating, persisting, or maintaining pace. [Dkt. 10-2 at 20.] In so finding, the ALJ noted:

> The claimant has difficulty with concentrating and completing tasks (B3E/6; B6E/6). She has treated for anxiety and depression and has been noted to have abnormal mood (B3F/47; B5F/26). She at times experiences forgetfulness regarding finances and has difficulty maintaining attention (B3E/4, 6; B6E/4, 6).

*Id.* When discussing the basis for his RFC determination, the ALJ stated the following:

> The claimant has also reported difficulty with concentration, anxiety, and depression, as well as frustration, intermittent confusion, panic attacks, and crying spells, and has been diagnosed with anxiety and depression (B3F/24, 43, 47, 60; B8F/1; B11F/1, 13, 22). At times, she was noted to have depressed or anxious

---

[6] As the ALJ noted in his decision, to be a medically-determinable impairment, "[a]n 'impairment' must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques." [Dkt. 10-2 at 18.] Brain lesions diagnosed by repeated MRIs clearly satisfy this definition.

9

> mood and rapid or pressured speech, and she noted side effects from medication (B3F/47, 49; B5F/26). However, she was often noted to have intact memory and normal behavior, mood, affect, judgment, and cognition, and she denied ideations (B3F/3, 8, 12, 16, 26, 40, 43, 63; B5F/26; B8F/3; B11F/19, 29; B12F/8, 14). The claimant is able to prepare simple foods, do some chores, drive, go out alone, pay bills and count change, shop in stores, and spend time with others, and reports no significant difficulty in getting along with others (Hearing Testimony; B3E/3-6; B6E/3-6). Given the evidence of record, the undersigned has further limited the claimant to understanding, remembering, and carrying out detailed but not complex tasks on a sustained basis, but finds no greater mental limitations supported by the evidence of record.

*Id.* at 23.

Claimant argues that the ALJ's RFC finding runs afoul of Seventh Circuit precedent with regard to moderate limitations in concentration, persistence, or pace. The Court agrees. As the Seventh Circuit noted in *Crump v. Saul*,

> [w]hen it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like "simple, repetitive tasks" because there is no basis to conclude that they account for problems of concentration, persistence or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift.

932 F.3d 567, 570 (7th Cir. 2019) (citations omitted); *see also Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). So too, here, the ALJ limited Claimant to "understanding, remembering, and carrying out detailed but not complex tasks on a sustained basis," but this does not account for the ALJ's own finding that Claimant "has difficulty with concentrating and completing tasks" and "has difficulty maintaining attention," which led the ALJ to assess a moderate limitation in concentration, persistence, or pace. [Dkt. 10-2 at 20.] Indeed, this case is not distinguishable in any material way from *Lothridge*. In that case, in finding that Lothridge had moderate limitations in

10

concentration, persistence, or pace, the ALJ had "acknowledged that Lothridge only 'sometimes finished what she started,' 'got frustrated easily,' 'did not handle stress well,' and had 'some challenges with concentration'—even that she was distressed during the hearing and needed to have questions repeated." *Lothridge*, 984 F.3d at 1233. The Seventh Circuit found that remand was required because "the ALJ's step-four finding on her residual functional capacity a few pages later contained no corresponding restrictions. It limited Lothridge to 'simple instructions and tasks with restricted interactions with others' without addressing her ability to stay on task for a full workday or to perform at the required speed." *Id.* So too, here, the ALJ's RFC failed to address the Claimant's difficulties with concentrating, completing tasks, and maintaining attention, difficulties that the ALJ himself acknowledged.

The Commissioner argues that "Plaintiff contends that time off task of greater than ten percent should have been assessed to correspond with moderate concentration deficits, [but] she has cited no medical source opinions that supported such limits." [Dkt. 19 at 18.] However, in so arguing, the Commissioner wholly ignores the applicable Seventh Circuit precedent, cited above, that makes it clear that if the ALJ finds moderate limitations in concentration, persistence, or pace, the ALJ **must** account for those limitations in his RFC, and that limiting a claimant to simple tasks is not sufficient to account for moderate concentration difficulties. The Commissioner also notes that "there was no medical source statement assessing specific functional limitations, relevant or otherwise, which conflicted with the ALJ's work capacity finding." *Id.* at 19. That argument ignores the limitations that the ALJ himself found—moderate limitations in concentration, persistence, or pace, manifesting in difficulty with concentrating and

11

completing tasks and maintaining attention.  Once the ALJ made that factual finding, his RFC

had to account for those limitations.[7]  This must be corrected on remand.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's

decision be **REVERSED** and **REMANDED for further proceedings consistent with this**

**Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with

the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to

timely file objections within fourteen days after service shall constitute a waiver of subsequent

review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  20 JUN 2023

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[7] The Commissioner's citation to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019), is also
unavailing.  In that case, the ALJ limited Jozefyk to "simple, routine, repetitive tasks requiring
no more than occasional contact with supervisors and coworkers; no contact with the public; and
an assigned work area at least ten to fifteen feet away from coworkers." *Id.* at 495.  The Seventh
Circuit held that these limitations adequately accounted for Jozefyk's moderate limitations in
concentration, persistence, or pace because "according to the medical evidence, his impairments
surface only when he is with other people or in a crowd"; thus, keeping him away from other
people while working would avoid triggering his limitations. *Id.* at 498.  That is not the case
here.

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.